SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 79, AFL-CIO *v.* STATE RACING COMMISSIONER

1. LABOR RELATIONS—PUBLIC EMPLOYEES—REGULATION—LEGISLATIVE POWER.

   The power of the legislature to enact laws regarding disputes concerning public employees is limited by the constitution (Const 1963, art 4, § 48).

2. LABOR RELATIONS—CIVIL SERVICE EMPLOYEES—STATUTES—PERA.

   Classified state civil service employees are not subject to the public employees relations act (MCLA § 423.201 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Service § 2.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1155 *et seq.*
[3] 15 Am Jur 2d, Civil Service § 8.
[4] 48 Am Jur 2d, Labor and Labor Relations § 1155 *et seq.*
[5] 48 Am Jur 2d, Labor and Labor Relations § 1191 *et seq.*
Union organization and activities of public employees. 31 ALR2d 1142.

3. LABOR RELATIONS—CIVIL SERVICE COMMISSION—POWERS.

The Civil Service Commission, by constitution, is vested with plenary powers in its sphere of authority.

4. LABOR RELATIONS—CIVIL SERVICE EMPLOYEES—CIVIL SERVICE COMMISSION—JURISDICTION—CLASSIFICATION—VETERINARIANS.

Assistant veterinarians were civil service employees and were subject to the jurisdiction of the Civil Service Commission, not the Employment Relations Commission, even though the assistant veterinarians were not classified as state civil service employees and were paid by the racetracks they regulated, where they were employed by the state, were under the direction of the State Racing Commissioner, and their sole duty was to make certain that racehorses had not been doped, a state function, because a constitutional provision setting forth those who are in the state civil service cannot be frustrated by the Civil Service Commission's ignorance of the existence of the assistant veterinarian and their pay arrangement (Const 1963, art 11, § 5).

5. LABOR RELATIONS—CIVIL SERVICE EMPLOYEES—EMPLOYMENT RELATIONS COMMISSION—ELECTION.

Employment Relations Commission's order directing that an election be held to determine the bargaining agent of assistant veterinarians was reversed where the assistant veterinarians were employees of the state even though the election petitions were filed before the veterinarians had been officially classified as state civil service employees (Const 1963, art 4, § 48; Const 1963, art 11, § 5; MCLA § 423.201 *et seq.*).

Appeal from the Michigan Employment Relations Commission. Submitted Division 2 October 14, 1970, at Lansing. (Docket No. 9,039.) Decided October 30, 1970.

Petition by Service Employees International Union Local 79, AFL-CIO, for an election to determine a collective bargaining representative for assistant veterinarians employed by the state under the direction of the State Racing Commissioner. Michigan Civil Service Commission intervened, con-

tending that the veterinarians were under its jurisdiction. The Employment Relations Commission directed an election. The racing commissioner appeals. Reversed with instructions to dismiss the petition for lack of jurisdiction.

*Haggerty & Franklin,* for plaintiff.

*MacLean, Seaman, Laing & Guilford,* for intervenor.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Franklin J. Rauner,* Assistant Attorney General, for defendant.

Before: Quinn, P. J., and V. J. Brennan and Ziem,* JJ.

Ziem, J. This case concerns the direction of an election pursuant to Michigan Public Employment Relations Act, MCLA § 423.201 *et seq.* (Stat Ann 1968 Rev § 17.455[1] *et seq.*), hereinafter referred to as PERA. PERA is a comprehensive law providing for collective bargaining and administrative procedures to deal with labor disputes involving public employees. The employees here concerned are assistant veterinarians who perform services for the Michigan Racing Commission at several racetracks in the Detroit area.

On June 16, 1969, the Employment Relations Commission received five petitions for election requesting that the commission conduct an election to determine whether a unit designated as the "Assistant Veterinarians" of the five racetracks concerned wished to be represented by plaintiff for purposes

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of collective bargaining. The employees in this case are employed by the State of Michigan and are under the direction of the racing commissioner; the employees' sole duty is to see that the horses have not been doped or otherwise tampered with. At the time of the hearing, the employees were appointed by the racing commissioner but paid by the various racetracks which the commissioner regulated. This practice has since been corrected.

The real bone of contention is whether the assistant veterinarians are included in the state civil service. The Employment Relations Commission made the following finding:

"Assistant veterinarians are employees of the Michigan Racing Commission. Their duty and sole purpose is to police racetracks on behalf of the state to assure the State Racing Commissioner that horses are not doped. They are appointed, directed and controlled by the state. Their only purpose is state business. The tracks are assessed to pay their services.

"In the case at hand, however, the veterinarians' assistants are not classified state civil service employees. They are, in effect, employees of the racing commission, paid by private racetracks."

Accordingly, the Employment Relations Commission named the racing commissioner as employer and ordered a representative election to be held. The election was held and the union was certified as a bargaining agent. The racing commissioner to date has refused to bargain and presently an unfair labor practice charge is filed against him. The Civil Service Commission has intervened contending that the assistant veterinarians are under its jurisdiction.

The Michigan Civil Service Commission derives its authority from the Constitution of the State of

Michigan. The area of authority of the Civil Service Commission is defined in the Constitution as follows:

"The classified state civil service shall consist of all positions in the state service except those filled by popular election, heads of principal departments, members of boards and commissions, the principal executive officer of boards and commissions heading principal departments, employees of courts of record, employees of the legislature, employees of the state institutions of higher education, all persons in the armed forces of the state, eight exempt positions in the office of the governor, and within each principal department, when requested by the department head, two other exempt positions, one of which shall be policy-making. The civil service commission may exempt three additional positions of a policy-making nature within each principal department". Const 1963, art 11, § 5.

The obligation of the Civil Service Commission to set conditions of employment for state employees is also set forth in the Constitution of 1963.

"The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personal transactions, and regulate all conditions of employment in the classified service". Const 1963, art 11, § 5.

The power of the legislature to enact laws regarding disputes concerning public employees is limited by the Constitution:

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service". Const 1963, art 4, § 48.

A previous decision of the Michigan Labor Mediation Board (now Employment Relations Commission), in the case of *Lapeer State Home and Training School* (Case No. R–65K–324, *et seq.,* 1966 Michigan Labor Mediation Board Opinions 56), held correctly that classified state civil service employees are not subject to the Public Employment Relations Act.

Any question regarding control of conditions of employment in the state service has been resolved by the Michigan Supreme Court in a case discussing the scope of authority of the Liquor Control Commission, the Court of Claims, and the Civil Service Commission:

"[The] Civil Service Commission by the above mentioned constitutional amendment is vested with plenary powers in its sphere of authority." *Plec* v. *Liquor Control Commission* (1948), 322 Mich 691, 694. Accord: *Robinson* v. *Department of State* (1969), 20 Mich App 231.

Because the employees in question were employees of the State but not literally within the "classified state civil service", the Employment Relations Commission felt it had authority under PERA to issue the order appealed from. The clear constitutional mandate cannot be frustrated simply because the Civil Service Commission was unaware of the existence of these employees and their unique payment arrangements, nor because the petitions for election were filed before the employees were officially "classified state civil service".[1]

_____

[1] By order dated May 26, 1970, the Civil Service Commission ordered the assistant veterinarians into the state classified civil

The order of the Employment Relations Commission directing an election is reversed and the Commission is directed to dismiss the petitions for lack of jurisdiction to entertain them.

All concurred.

---

service effective July 1, 1970. The Commission order established the wage rates and subjected the assistant veterinarians to all of the provisions applicable to state civil service employees. The legislature has made provision for the payment of these salaries and the employees are now being paid by state voucher.