BROWN v. DEPARTMENT OF MILITARY AFFAIRS

OPINION OF THE COURT

1. STATUTES—UNAMBIGUOUS STATUTES—COURT'S DUTY.
   Where the language of a statute is clear and unambiguous the courts can only obey and enforce.

2. STATUTES—CONSTRUCTION—USE OF "SHALL".
   The use of the word "shall" in a statute is mandatory and imperative, and when used in a command to a public official it excludes the idea of discretion.

3. MILITIA—NATIONAL GUARD—PAY RATE—CHANGES—STATUTES.
   Department of Military Affairs lacked any authority to change its pay system for state National Guard officers where the applicable statute provides that officers in National Guard "shall" be paid in the same manner as Federal army officers (MCLA § 32.45).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 50 Am Jur, Suretyship § 217.
[3–8] 53 Am Jur 2d, Military, and Civil Defense § 44.

4. CONTRACTS—ACTIONS BARRED—BASIS.

The nature and construction of the particular contract before the court determine whether an action is barred.

5. LIMITATION OF ACTIONS—MILITIA—NATIONAL GUARD—BACK PAY.

A complaint by a National Guard officer for back pay from 1950 to 1967 was not barred by the one-year limitation period even though the complaint was filed in 1968 where the trial court found that the plaintiff had been on continuous state duty, was not free to leave his job unless superior authorities accepted his resignation, that the plaintiff's superior officer had requested that a complaint not be filed and that the request was tantamount to an order and the plaintiff had been denied requested audits and thus unable to find out if anything was owing him; the trial court determination that the plaintiff's cause of action accrued in 1967 when the legislature acknowledged the discrepancy in the pay scales and corrected the trouble by statute was not clearly erroneous (MCLA § 32.45).

6. MILITIA—NATIONAL GUARD—PAY RATE—CHANGES IN PAY RATE—STATUTES.

Department of Military Affairs had no authority to revise the pay system for state National Guard officers so as to allow some officers to be paid less than Federal army officers where the applicable statute mandates that the National Guard officers be paid the same as Federal officers and where the appropiration acts did not alter the pay scales and did not designate who would be paid or how much (MCLA § 32.45).

7. ESTOPPEL—BACK PAY—MILITIA—NATIONAL GUARD.

A state National Guard officer was not estopped from claiming earned back pay by his accepting paychecks during the period of dispute, where the officer did object to the amount he was paid and where because of fear of reprisals or job loss he was not in a position to mitigate damages (MCLA § 32.45).

DISSENT BY CHURCHILL, J.

8. LIMITATION OF ACTIONS—MILITIA—NATIONAL GUARD—RISK OF ENFORCING RIGHTS.

*A state National Guard officer should not be allowed to bring a cause of action for earned back pay after the statutory period for bringing the action has passed, even though he was legally entitled to the pay on all other grounds and even though, if he had timely pressed his claims, the officer might have lost*

*favor with his superior officers and might possibly have lost his position, because the enforcement of rights frequently entails risks.*

Appeal from Court of Claims, William John Beer, J. Submitted Division 2 November 4, 1970, at Lansing. (Docket No. 7810.) Decided February 16, 1971. Reversed by Supreme Court, 386 Mich 194.

Complaint by Lieutenant Colonel John P. Brown against the State of Michigan and the Department of Military Affairs for back pay. Judgment for plaintiff. Defendants appeal. Affirmed.

*Newman & MacKay,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Wallace K. Sagendorph* and *Charles D. Hackney,* Assistant Attorneys General, for defendants.

Before: BRONSON, P. J., and FITZGERALD and CHURCHILL,* JJ.

FITZGERALD, J. The present action arises through plaintiff's complaint in the state Court of Claims for back pay from 1950 to 1967.

PA 1909, No 84, § 45, of the military establishment act, as amended in 1937 by PA 239, MCLA § 32.45 (Stat Ann § 4.637), provides:

"All officers shall receive for each day spent by them in actual service or on duty under the orders of the governor, who is authorized to determine when to place said officers on duty, the pay and allowances, including traveling allowances and all necessary expense for horses for mounted officers and

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

increased pay on account of length of service as fixed by law or regulations for officers of the same rank in the service of the United States."

Plaintiff joined the state National Guard as an active officer in 1947. He was paid in accordance with the statute until 1950. In 1950 a new pay plan was devised and approved by the military board. Under this plan, plaintiff had his pay reduced from that of a captain with a number of years longevity to some days less than the 30 normal army days per month. Usually the pay rate was based upon 24 to 26 days per month. In 1959, the military board further revised the pay system whereby each officer would request to be called to actual duty for 30 days per month at his full rank, but at less longevity than he actually had. This resulted in a pay decrease because plaintiff had advanced both in rank and longevity.

In 1964, plaintiff prepared a complaint for court presentation requesting pay adjustment, but was requested by superior officers to delay his action pending the decision in *McDonald* v. *Schnipke* (1968), 380 Mich 14. Plaintiff has repeatedly asked for a payroll accounting which was not prepared or published.

The state Court of Claims ruled in favor of plaintiff's 1968 complaint and ordered a state payroll audit. Defendants appeal, raising four issues.

## I

*Did the pay system of March 4, 1950 to December 31, 1959, violate PA 1909, No 84, § 45, as amended?*

PA 1909, No 84, § 45, clearly provides that officers in the state military establishment *shall* be paid in the same manner as Federal army officers. This statute was never repealed, changed, or altered

through amendment until 1967.[1]   It was mandatory and in effect at all times.   Where the language of a statute is clear and unambiguous, it is only for the courts to obey and enforce it.   *Nordman* v. *Calhoun* (1952), 332 Mich 460; *Shaw* v. *Lakeway Chemicals, Inc.,* (1966), 3 Mich App 257, 262.   Use of the word "shall" is mandatory and imperative, and when used in a command to a public official, it excludes the idea of discretion.   The Court of Claims correctly ruled: "The Department of Military Affairs, in view of this command of the legislature, lacked all authority to try to adjust it in a different manner".

The Michigan Department of Military Affairs had no authority to tamper with or change in any way the pay system advocated through the clearly expressed intent of the legislature.   Both the pay scale change in 1950 and again in 1959 violated the statutory mandate.

## II

*Was plaintiff's action barred by failure to file notice of claim and by the three-year statute of limitations?*

Defendants contend that the court had no jurisdiction to entertain plaintiff's claim back to 1950 because he did not file his action within the proper time.   To support this position defendants conclude that plaintiff's cause of action accrued with each paycheck and failure to file a written notice of claim within the required one year and within three years defeats plaintiff's claim due to a running of the statute of limitations.   The court held:

"After hearing all of the testimony I am satisfied that this contention on the part of the state is without help to the state in any way.   I conclude factu-

[1] PA 1967, No 150 (MCLA § 32.513; Stat Ann 1969 Rev § 4.678 [113]).

ally that Col. Brown was, in effect, ordered not to make his claim."

Whether or not an action is barred depends upon the nature and construction of the particular contract involved. Defendants refused to acknowledge any breach and this is amplified by their failure to provide plaintiff with a payroll audit. The court found that plaintiff was prevented from filing his claim under peculiar circumstances relating to military personnel because of requests and duress by superior officers. For this reason, the court determined the cause of action accrued on July 1, 1967, when the legislature acknowledged the discrepancy in military establishment pay scales and corrected the trouble through statute. PA 1967, No 150. Consequently, the court held, the action was not barred.

To support the above determination, the court made the following findings of fact: Plaintiff had been on continuous state duty, he was not free to leave his job without consent of his superior officers, and was effectually ordered not to bring suit.

The court held that once plaintiff consented to be placed on duty, he was on duty all the time. Evidence disclosed that plaintiff as a member of the National Guard could be called to duty in case of riot. Furthermore, plaintiff was a military officer without authority to quit unless superior authority accepted the resignation in contrast to a public employee who would have the right and power to do so. The court determined that military pressures made this case unique and that a request from a superior officer is tantamount to an order and as a subordinate officer, plaintiff was prevented from making his claim if he wanted to remain in the military establishment.

The trial court, in addition to the issue of military duress, found:

"There is another reason why I am unable to accept this jurisdictional contention on the part of the state and that is it appears undisputed in this record that Col. Brown was unable to even find out himself whether or not factually anything was owing to him because his request for audit was refused or, in effect, denied."

The trial judge had ample and credible evidence upon which to base his findings.

"When reviewing the decision of a trial court sitting without a jury, this Court does not reverse unless the trial court's findings of fact were clearly erroneous, GCR 1963, 517.1, *People* v. *Hummel* (1969), 19 Mich App 266." *Parkdale Homes, Inc.,* v. *Township of Clinton* (1970), 23 Mich App 682, 687.

### III

*Was the modification of pay system justified by appropriations and insufficient appropriations?*

Defendants contend the pay system revision was justified by appropriations and because of insufficient funds, the action was necessary to stay within the state appropriation.

The trial court ruled:

"I am unable to accept the argument on the part of the state, even though so ably presented, that an appropriations statute permits or prohibits the application of the clearly-worded statute referred to to pay the Michigan military officers."

Courts are required to follow the plain unambiguous mandates of an existing and controlling statute. If the legislature desired to change the pay plan of the Department of Military Affairs, they could have adopted a statute authorizing a new pay plan. The appropriation acts did not alter or change the pay scale of state military officers in any way. They did

not designate who would be paid or how much. The changes in the rate of pay were made by superior officers and sanctioned by the Department of Military Affairs in violation of the governing statute. In the absence of specific legislation setting rates of pay, the trial court was correct in holding PA 1909, No 84, § 45, applied.

*Lewis* v. *State* (1958), 352 Mich 422, dealing with pensions, and *Wayne County* v. *Social Welfare Department* (1955), 343 Mich 475, relating to state hospital patients, cited by defendants, are distinguishable and not controlling.

The appropriating statutes in the present case did not refer to or set any standard for payment of state military officers. The pay-regulating statute calling for wages in accordance with Federal officers of like grade and longevity did this. Plaintiff's action to recover back-earned pay is based upon an existing and controlling statute. The legislature simply appropriated an amount, either lump-sum or straight-line method for the department without legislating concerning its use. Under these circumstances the trial court properly ruled that plaintiff was entitled to reimbursement.

## IV

*Was plaintiff estopped by his consent to variance in the pay system from pressing his claim?*

Finally, defendants challenge the following trial court finding:

"Now argument was put forth on behalf of the State that having accepted less, if he has accepted less, that he is estopped. I am unable to accept that contention, either. We have this state law and the State of Michigan ought never to be in the position of failing to follow its own state laws even if by mere inadvertence, and the right to this correctly-adjusted

compensation may never be waived or lost under any doctrine or estoppel that I know of."

Defendants aver that this places plaintiff in a unique category of persons who can never waive or lose their claim under a state statute.

The court, in making the above observation, re-affirmed its basic premise that when the state legislature passed a mandatory statute establishing pay schedules it remains the law in the absence of repeal or amendment.

In view of the mandatory language of the statute setting pay schedules and the finding that plaintiff objected in fact to pay decreases and in view of the fear of job loss or of other reprisals, we necessarily conclude that he was never in a position to mitigate damages. *Jones* v. *Doonan* (1933), 265 Mich 384, is inapplicable. In *Jones,* a policeman was discharged and waited for three years before bringing an action for reinstatement and back pay. The court held he was estopped, but here plaintiff was continuously employed in the military establishment and his complaint seeks earned back pay in contrast to unearned pay.

The court found, as a fact, that plaintiff's credibility as a witness was to be preferred. In law cases tried without a jury, the trial court is the judge of the credibility of witnesses. *Roney* v. *Mazzara* (1947), 319 Mich 103; *Elliot* v. *Buchanan* (1969), 20 Mich App 567.

In view of a clear reading of the applicable statutes and the findings of the court which are supported by credible evidence, we affirm the Court of Claims judgment.

No costs, a public question being involved.

BRONSON, P. J., concurred.

CHURCHILL, J., (*dissenting*).   The military pay statute was violated.   I also agree that the finding of the Court of Claims that the plaintiff was, in effect, ordered not to make his claim was not clearly erroneous.   Furthermore I agree that the plaintiff is not estopped from pressing his claim.

I do not, however, agree that the effect of this order should be to toll or suspend the statute of limitations.[1]   It does not appear that the plaintiff would have suffered any sanctions by pressing his claim except the loss of favored status with one or more superior officers and the possible loss of his position under one pretext or another.[2]   Absent some special contractual or statutory job security these are sanctions that one may ordinarily anticipate when one sues his employer.   The enforcement of rights frequently entail risks.   The plaintiff elected not to take the risks and now wants the best of two worlds.

The plaintiff has cited no authority that a threatened severance of a beneficial relationship with an adversary party tolls a statute of limitations and I do not believe we should make one.

Furthermore it is unclear why the state's failure to conduct a payroll audit prevented the plaintiff from filing his claim.   The Court of Claims could and did order an audit after the claim was filed.

For these reasons I vote to remand this claim for determination of the plaintiff's claim with the statute of limitations applied.

---

[1] CL 1948, § 600.6452 (Stat Ann 1962 Rev § 27A.6452).
[2] He might have been court-martialed but the correctness of his position would have been a valid defense.